IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 2, 2017

**PHILLIP NEAL KENNEDY v. JANE KENNEDY**

**Appeal from the Chancery Court for Williamson County**
**No. 39530     Michael W. Binkley, Chancellor**

_____

**No. M2016-01635-COA-R3-CV**

_____

This post-divorce appeal concerns the father's petition to modify the residential schedule in an agreed parenting plan. Following a hearing, the trial court found that a material change in circumstances necessitated a change in the schedule. The court modified the plan by awarding the father additional co-parenting time. The court also entered a new child support order and directed the mother to remit payment for retroactive child support and the father's attorney fees. The mother appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J. and BRANDON O. GIBSON, J., joined.

Radford H. Dimmick, Nashville, Tennessee, for the appellant, Jane Kennedy.

Nick Shelton, Franklin, Tennessee, for the appellee, Phillip Neal Kennedy.

**OPINION**
**I.     BACKGROUND**

Jane Kennedy and Phillip Neal Kennedy (individually "Mother" and "Father" and collectively "the Parties") were divorced by order of the court in June 2011. Two children were born of the marriage, Clayton ("the Child") and Casey, who has since attained the age of majority. The divorce decree incorporated a parenting plan in which Mother was designated as the primary residential parent; however, the Parties were given equal co-parenting time.

On November 2, 2011, Father filed a petition to modify, requesting designation as the primary residential parent and additional co-parenting time. The Parties attended mediation and entered into an agreed order, designating Father as the primary residential parent and awarding Mother 125 days of co-parenting time. Father agreed to remit child support in the amount of $437 per month.

On September 30, 2013, Father filed another petition to modify, requesting the court to reduce Mother's co-parenting time with the Child[1] to 80 days and enter a new child support order. He alleged that a material change in circumstances had occurred as evidenced by Mother's failure to exercise her co-parenting time. He requested attorney's fees and an order requiring payment of retroactive child support, calculated from the filing date of the petition.

Mother responded with a petition for contempt for failure to pay child support for September, October, November, and December 2013 in accordance with the agreed order.[2] Mother filed an answer to the petition in which she denied his allegations and claimed that her failure to visit was a result of his refusal to permit visitation. She requested 148 days of co-parenting time and an adjustment to the child support order in light of her additional co-parenting time.

A period of extensive and acrimonious litigation followed in which the Parties filed competing requests for psychological evaluations and Mother filed a motion for criminal contempt. Following the resolution of all pending motions, the case finally proceeded to a hearing on the petition to modify on June 20, 2016.

Mother agreed with the majority of Father's suggestions for co-parenting time during holidays and breaks. She requested additional co-parenting time Sunday night through Friday morning every other week with one additional weekend per month when possible. She explained that her employment required her to work some weekends and that the Child spent time with friends on the weekends. She also requested the first right of refusal when Father travels. She conceded that she had not exercised the entirety of her co-parenting time in the past but explained that Father scheduled activities during her time and did not encourage the Child to comply with the parenting plan. She also chose not to enforce her co-parenting time on occasion because the Child refused.

---

[1] Casey had obtained the age of majority at the time of Father's filing of the petition.

[2] The court reduced Father's child support obligation to $250 per month during the pendency of the hearing on the petition, commencing January 1, 2014. The Parties later agreed to Father's payment of child support in the amount of $94 per month pending the hearing on the petition.

Mother also testified concerning her love for the Child and her desire to maintain a relationship with him. She also claimed that his attendance at school was lacking and believed that allowing her co-parenting time during the weekday would ensure an increase in his attendance.

Relative to child support, Mother testified that her gross income for 2013, 2014, and 2015 was $58,000. She agreed that Father generally paid for the Child's activities and needs given his greater income.

Father admitted that the Child had experienced stress and anxiety but testified that the Child is doing well now and has a pattern of continuity in his life. He explained that Mother's co-parenting time had increased over the past few years and that she exercised 125 days of co-parenting in 2015. He believed that 125 days of co-parenting time per year was sufficient and agreeable to the Child. He agreed to encourage the Child to spend time with Mother in accordance with the plan.

Relative to child support, Father stated that he was currently unemployed but had received a severance package from his previous employer. He provided that his gross income prior to his current situation was approximately $150,000 to $200,000 per year. He noted that his current income was approximately $11,667 per month.

The Child's testimony was taken in camera with a court reporter present. The Child, who was 17 years old at the time of the hearing, indicated his agreement with the court's desire to award minimal but consistent co-parenting time for the remainder of his minority.

Following the hearing, the court found that a material change in circumstances necessitated a modification of the residential schedule. The court awarded Mother 90 days of co-parenting time and ordered her to remit payment of child support in the amount of $352 per month. The court also ordered Mother to remit payment for attorney fees in the amount of $32,000 and retroactive child support for the past 12 months, thereby denying Father's request to calculate retroactive support from the time the petition was filed. This timely appeal followed.

## II.    ISSUES

We consolidate and restate the issues on appeal as follows:

A.    Whether the trial court abused its discretion in modifying the residential schedule.

B.      Whether the trial court abused its discretion in awarding retroactive child support.

C.      Whether the trial court abused its discretion in awarding Father attorney fees.

D.      Whether Father is entitled to attorney fees on appeal.

## III.    STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). "A trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions." *Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013) (citing *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007)).

In matters of child custody, trial courts are vested with broad discretion, and appellate courts will not interfere with the trial court's decision except upon a showing of erroneous exercise of that discretion. *See Whitaker v. Whitaker*, 957 S.W.2d 834, 836-37 (Tenn. Ct. App. 1997). The Tennessee Supreme Court further explained the broad discretion afforded trial courts in such matters as follows:

> Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. Thus, determining the details of parenting plans is peculiarly within the broad discretion of the trial judge. It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court. A trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion. An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. A trial court abuses its discretion in establishing a residential parenting schedule only when the trial court's ruling falls outside the spectrum of rulings that might

- 4 -

reasonably result from an application of the correct legal standards to the evidence found in the record.

*Armbrister*, 414 S.W.3d at 693 (internal citations omitted).

An award of attorney fees in custody and child support cases is made "in the discretion of [the] court." Tenn. Code Ann. § 36-5-103(c); *see also Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001). Under the abuse of discretion standard, this court is bound by the principle that the trial court "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *Deakins v. Deakins*, E2008-00074-COA-R3-CV, 2009 WL 3126245, at *7 (Tenn. Ct. App. Sept. 30, 2009) (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)). A trial court abuses its discretion when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999) (citation omitted).

## IV.   DISCUSSION

### A.

Mother argues that the court erred in modifying the residential schedule by reducing her co-parenting time to 90 days. She notes that the court explicitly found that she carried her burden of proof in establishing a material change in circumstances necessitating a change in the residential schedule and that even Father indicated that 125 days of co-parenting was agreeable. Father responds that the court did not abuse its discretion in setting the residential schedule.

"A custody decision, once final, is res judicata upon the facts in existence or reasonably foreseeable when the decision was made." *Scofield v. Scofield*, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *3 (Tenn. Ct. App. Feb. 28, 2007) (citing *Young v. Smith*, 246 S.W.2d 93, 95 (Tenn. 1952)). However, because the circumstances of children and parents change, our courts are "empowered to alter custody arrangements when intervening circumstances require modifications." *Id*. at *2 (citing Tenn. Code Ann. § 36-6-101(a)(1)). Modification of an existing custody or visitation arrangement involves a two-step analysis. Tenn. Code Ann. § 36-6-101(a)(2)(B), (C). First, the parent attempting to modify the existing custody or visitation arrangement must prove that a material change in circumstances has occurred. Tenn. Code Ann. § 36-6-101(a)(2)(B), (C). "If a material change in circumstances has occurred, it must then be determined whether the modification is in the child's best interest[ ]." *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002) (footnote omitted).

The determination of whether a "material change in circumstance" occurred requires a different standard depending upon whether a parent is seeking to modify custody (i.e., change the primary residential parent) or modify the residential parenting schedule. Tenn. Code Ann. § 36-6-101(a)(2)(B), (C). A lower threshold is required for modification of a residential parenting schedule. *Scofield*, 2007 WL 624351, at *3. Tennessee Code Annotated section 36-6-101(a)(2)(C) provides, in pertinent part,

> If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

Here, the Parties essentially agreed that a change in the residential schedule was warranted. Mother alleged that Father frustrated her ability to exercise co-parenting time; while Father claimed that Mother failed to exercise her time and that the Child indicated a desire for less time. Father later admitted that Mother exercised 125 days of co-parenting time last year, which was a significant improvement. The record confirms that Mother's attempts to exercise her co-parenting time were thwarted by either Father's scheduling of activities or the Child's desire to remain with Father. However, as this case languished on the docket due to extensive litigation, the Parties appeared to have reached an understanding, allowing Mother more time with the Child. The Child had also almost reached the age of majority by the time of the hearing on the petition. Accordingly, we affirm the court's decision that a material change in circumstances occurred.

Having concluded that a material change in circumstances occurred, this court must now consider whether the trial court erred in modifying the parenting plan. In modifying a residential parenting schedule, the trial court must determine whether a change in visitation is in the best interest of the child. *In re J.C.S.*, No. M2007-02049-COA-R3-PT, 2008 WL 2924982, at *6 (Tenn. Ct. App. July 28, 2008). This determination requires consideration of a number of factors, including those set forth at Tennessee Code Annotated section 36-6-106(a) to make an initial custody determination and those at Tennessee Code Annotated section 36-6-404(b) to establish the schedule. *Id.*

Trial courts are not required to articulate each and every fact and its application in custody cases. *See Murray v. Murray*, No. M2009-01576-COA-R3-CV, 2010 WL 3852218, at *8 (Tenn. Ct. App. Sept. 28, 2010) (stating that "while the statute requires the trial court to consider all the applicable factors, there is no statutory requirement that the court list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination"). The order in this case contains sufficient findings "as to the reason and the facts that constitute the basis for the custody determination." Tenn. Code Ann. § 36-6-101(a)(2)(B)(i). The order also reflects the court's performance of the appropriate two-step analysis. *See Crafton v. Roberts*, No. W2015-00048-COA-R3, 2015 WL 9466011, *7-8 (Tenn. Ct. App. Dec. 28, 2015) (vacating the court's modification of a parenting plan due to a "lack of findings evidencing that the trial court performed the two-step analysis required for a custody modification"). Here, the court crafted a plan that adequately represented the Child's best interest, while also ensuring that Mother was given specific and consistent co-parenting time before the Child reached the age of majority. With these considerations in mind and recognizing the court's broad discretion, we hold that the record supports the court's modifications.

## B.

Mother next argues that the court erred in awarding Father retroactive child support. She does not take issue with the amount of support owed or the manner in which it was calculated but only argues that she, not Father, is entitled to retroactive support because the court's modification of the residential schedule was in error. Having affirmed the court's modification of the residential schedule, we also affirm the court's corresponding award of retroactive child support.

## C. & D.

Mother claims that the court abused its discretion by awarding attorney fees and claims that the amount awarded was unreasonable and not supported by the record. Father claims that Mother waived the issue of reasonableness and requests additional attorney fees on appeal pursuant to Tennessee Code Annotated section 36-5-103(c). He further claims that this appeal is frivolous, thereby entitling him to attorney fees on appeal pursuant to section 27-1-122.

Tennessee follows the American Rule which provides that "litigants pay their own attorney's fees absent a statute or an agreement providing otherwise." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *accord Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005). "Under the American [R]ule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right

to recover attorney fees; or (2) some other recognized exception to the American [R]ule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009).

A right to recover attorney fees in custody and child support disputes at trial or on appeal was created in Tennessee Code Annotated 36-5-103(c), which provides,

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, *in the discretion of such court*.

(Emphasis added.). Additionally, Tennessee Code Annotated section 27-1-122 provides for an award of sanctions in the form of attorney fees on appeal when an appeal is determined to be frivolous. To find an appeal frivolous, the appeal must be wholly without merit and lacking in justiciable issues. *See Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977); *Indus. Dev. Bd. of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995).

The record reflects that testimony was not presented in support of the request for attorney fees. The trial court need not have "a fully developed record of the nature of the services rendered" before awarding attorney fees. *Kahn v. Kahn*, 756 S.W.2d 685, 696 (Tenn. 1988); *Coleman v. Coleman*, No. W2011-00585-COA-R3-CV, 2015 WL 479830, at *11 (Tenn. Ct. App. Feb. 4, 2015). Indeed,

> a trial judge may fix the fees of lawyers in causes pending or which have been determined by the court, with or without expert testimony of lawyers and with or without a prima facie showing by plaintiffs of what a reasonable fee would be.

*Kahn*, 756 S.W2d at 696 (quoting *Wilson Mgmt. Co. v. Star Distribs.*, 745 S.W2d 870, 873 (Tenn. 1988)). However, the party requesting attorney fees must, at a minimum, provide "an affidavit containing the attorney's hourly rate and time spent on the case." *Coleman*, 2015 WL 479830, at *11 (citing *Miller v. Miller*, 336 S.W.3d 578, 587 (Tenn. Ct. App. 2010)). "Should a dispute arise as to the reasonableness of the fee awarded, then 'in the absence of any proof on the issue of reasonableness, it is *incumbent* upon the

[party challenging the fee] to pursue the correction of that error in the trial court by insisting upon a hearing upon that issue.'" *Kline v. Eyrich*, 69 S.W.3d 197, 210 (Tenn. 2002) (quoting *Wilson*, 745 S.W.2d at 873). Mother did not raise the issue of reasonableness before filing her notice of appeal. Consequently, reversal of the award is not justified because the record contains no proof that the award of attorney fees was unreasonable. *Id.* We affirm the award of attorney fees in deference to the trial court's discretion in such matters. Exercising our discretion, we also respectfully deny Father's request for attorney fees on appeal.

## V.    CONCLUSION

The decision of the trial court is affirmed. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Jane Kennedy.

_____
JOHN W. McCLARTY, JUDGE